**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lana Hazelwood, ) | No. 03-1641-PHX-ROS |
| )  Plaintiff, ) | **OPINION AND ORDER** |
| vs. ) | |
| ) | |
| United States of America, ) | |
| )  Defendant. ) | |

Pending before the Court are Defendant's Motion for Partial Summary Judgment and Defendant's Motion to Strike Plaintiff's Expert Disclosure. Also pending is Plaintiff's Motion for Leave to Amend Complaint. For the following reasons, the Motion for Summary Judgment will be granted, the Motion to Strike will be denied, and the Motion to Amend will be denied.

**BACKGROUND**

On April 18, 1999, Plaintiff's eleven year old daughter, Cassandra White, was riding a three-wheeled bicycle on North Shaw Avenue on the Yavapai-Apache Indian Reservation. (Defendant's Statement of Facts "DSOF" ¶ 1, Plaintiff's Statement of Facts "PSOF" ¶ 1) While attempting to turn her bicycle around, Cassandra lost control, left the paved road, traveled across the shoulder of the road and onto a portion of bedrock which sloped towards a ravine. Cassandra's bicycle gathered speed and eventually caught on a tree, throwing

1  Cassandra into the ravine. Cassandra fell to the bottom of the ravine and hit her head on a
2  rock. She died approximately ten minutes later.

3  In August 2003, Plaintiff filed this suit pursuant to the Federal Tort Claims Act
4  ("FTCA"), 28 U.S.C. §§ 2671-80. Plaintiff claims that Defendant, through the Bureau of
5  Indian Affairs ("BIA"), was responsible for the design and maintenance of North Shaw
6  Avenue. Plaintiff alleges that "[t]he ravine is an open and obvious danger and should have
7  been protected by proper barriers, railings, guards and/or warning signs." Plaintiff also
8  alleges that Defendant was negligent "in failing to properly maintain North Shaw Avenue."
9  (Doc. 1) An initial scheduling conference was held on March 12, 2004. A Rule 16
10 Scheduling Order was signed that same day. That Order provided December 1, 2004 as the
11 deadline for the disclosure of expert witnesses. (Doc. 12) On December 1, 2004, Plaintiff
12 disclosed her expert witnesses as "1. A person qualified in the field of roadway planning and
13 engineering design and civil engineering. [and] 2. A person qualified in the field of accident
14 reconstruction." Plaintiff did not "disclose the names of her experts, a summary of their
15 reports, a basis for their opinions or any of the information required by Rule 26(a)." (Doc.
16 48)

17 Plaintiff later moved for a 120 day extension of the discovery deadline. (Doc. 36) In
18 that request, Plaintiff stated that she was still waiting for Defendant to produce "'as-built'
19 maps of the roadway where the accident occurred." (Doc. 34) Plaintiff also stated that once
20 Defendant produced these maps she would "need additional time to consult with a civil
21 engineer/highway design expert." (Id.) Defendant did not object to the requested extension.
22 Plaintiff's request was granted in a revised Rule 16 Scheduling Order. That Order retained
23 the original December 1, 2004 deadline for the disclosure of expert witnesses but extended
24 discovery until August 31, 2005.

25 Plaintiff supplemented her initial expert disclosure on August 31, 2005 by providing
26 the name of the civil engineer she planned on using and a schedule of his fees. (Doc. 51 ex.
27 3) Plaintiff supplied a report from this expert a short time later. Defendant argues that it was
28 was not able to depose the proffered expert because his report was provided after the close

of discovery in August. Based on this untimely disclosure, Defendant now asks the Court to strike Plaintiff's expert. (Doc. 48) Plaintiff justifies the timing of her disclosure by arguing that she "was unable to meaningfully use an expert until she received disclosure of the information an expert would need to consider in order to form opinions." This disclosure did not take place until August 12, 2005 when Defendant disclosed the "Final Construction Report" for North Shaw Avenue.

Defendant has moved for partial summary judgment "with respect to the design of . . . North Shaw Avenue, including guardrails/barrier warrants and/or warning signs in the design." (Doc. 49) Defendant believes that the discretionary function exception of the FTCA bars all of Plaintiff's claims. Plaintiff believes that the discretionary function exception does not apply to Defendant's activities in this case.[1]

## ANALYSIS

### I. Jurisdiction

Plaintiff alleges that the United States, through its employees in the BIA, negligently designed and maintained North Shaw Avenue which resulted in the death of Plaintiff's daughter. The Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).[2]

### II. Applicable Law

The FTCA "waives the federal government's immunity from suit for a discrete class of lawsuits." O'Toole v. United States, 295 F.3d 1029, 1033 (9th Cir. 2002). The waiver of immunity applies to most tort claims. 28 U.S.C. § 2674. The waiver is, however, subject to

---

[1] The FTCA requires a plaintiff to seek relief from the "appropriate Federal agency" prior to filing suit. 28 U.S.C. § 2675. Plaintiff states in her complaint that such relief was sought and Defendant does not dispute this.

[2] District courts "have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

- 3 -

a number of exceptions. 28 U.S.C. § 2680. One such exception is known as the discretionary function exception. 28 U.S.C. § 2680. That exception "precludes tort liability for '[a]ny claim based upon an act or omission of an employee of the Government . . . based upon . . . a discretionary function or duty.'" O'Toole, 295 F.3d at 1033 (quoting 28 U.S.C. § 2680(a)). The only issue in the motion for partial summary judgment is the applicability of that discretionary function exception. This is an issue of federal law. See United States v. Muniz, 374 U.S. 150, 164 (1963) (holding that "[w]hether a discretionary function is involved is a matter to be decided under [federal law] rather than under state rules").

The motion to strike involves an application of Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1). These Rules set forth the timing and necessary content of expert witness disclosures, as well as the possible sanctions for inadequate disclosures. The application of these Rules is also an issue of federal law. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) ("[I]f a Federal Rule of Civil Procedure is valid under the Constitution and the Enabling Act, it applies according to its terms in all civil cases in federal district court.").

**III. Standard for Summary Judgment**

Defendant has moved for partial summary judgment on the issue of the discretionary function exception. If the discretionary function exception applies to some of Plaintiff's claims, the Court lacks subject matter jurisdiction over those claims and they must be dismissed. See Marlys Bear Medicine v. United States, 241 F.3d 1208 (9th Cir. 2001) (finding discretionary function exception applied to certain claims but not to others). Defendant "bears the ultimate burden of proving the applicability of the [discretionary function] exception." Schmoldt v. Wadco Indus., Inc., 941 F. Supp. 905, 907 (D. Ariz. 1996). To meet this burden in the context of a motion for summary judgment, Defendant must "adduce[] sufficient evidence to establish that no genuine issues of material fact remain for trial with respect to the discretionary function exception." Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992). As in other types of summary judgment cases, the court must

view the pleadings and supporting documents in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[3]

## IV. Discretionary Function Exception

The Ninth Circuit employs a two part test when determining if the discretionary function exception should apply. First, the Court determines "whether the challenged action was a discretionary one–i.e., whether it was governed by a mandatory statute, policy, or regulation. If the action is not discretionary, it cannot be shielded under the discretionary function exception." Whisnant v. United States, 400 F.3d 1177, 1180-81 (9th Cir. 2005). Second, the Court determines "whether the challenged action is of the type Congress meant to protect–i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis." Id. at 1181. If a decision is not susceptible to such analysis, the exception does not apply. Defendant argues that there was no "mandatory statute, policy, or regulation" dictating the design of North Shaw Avenue, thus the design of North Shaw Avenue was discretionary. Id. at 1180-81. Defendant also believes that the design of North Shaw Avenue was susceptible to "social, economic, [and] policy analysis," so that the discretionary function exception should apply. Id. at 1181. These contentions are addressed below.

### A. Mandatory Statute, Policy, or Regulation

In moving for summary judgment, Defendant provided a declaration from Dave Smith, the Supervisory Highway Engineer in the BIA Division of Transportation. (Doc. 50 ex. N) In that declaration Mr. Smith stated that "[t]he BIA has no statutory or regulatory

---

[3] Plaintiff believes that this issue is not properly resolved on a motion for summary judgment. According to Plaintiff, Defendant should have brought a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). But "[a]pplicability of the discretionary function exception may be determinable upon a motion to dismiss or for summary judgment." Daniel A. Morris, Federal Tort Claims § 15:1 (Supp. 2005); compare Schmoldt, 941 F. Supp. 905 (addressing FTCA issue on motion for summary judgment) with O'Toole, 295 F.3d 1029 (9th Cir. 2002) (reversing district court's grant of motion to dismiss on FTCA issue).

directives which prescribe a specific course of specification with respect to designing roads, streets, and highways on the reservation." (Id.) The design guidelines for BIA roads, according to Mr. Smith, are based on "various publications by the American Association of State Highway and Transportation Officials." (Id.) Those publications "provide guidance" to designers but do not establish firm requirements. (Id.) One publication used by BIA designers states that the guidelines for road design are meant "to encourage independent designs tailored to particular situations." (Doc. 50 ex. I) Plaintiff agrees that the BIA uses various publications "for guidance" and does not point to any evidence that the design of North Shaw Avenue was controlled by a "mandatory statute, policy, or regulation." (Doc. 53 ¶ 2) The Government has provided sufficient evidence that the design of North Shaw Avenue was not dictated by a "mandatory statute, policy, or regulation." Thus, the first part of the discretionary function exception test has been satisfied.

### B. Policy Analysis

The second part of the discretionary function exception test–whether the action was susceptible to social, political, or economic analysis–requires a fact specific inquiry. Nat'l Union Fire Ins. v. United States, 115 F.3d 1415, 1418 (9th Cir. 1997). In support of its argument that the design decisions made by the BIA in relation to North Shaw Avenue were subject to social, economic, and policy analysis, Defendant points to publications stating road design requires the balancing of a number of factors, including safety and environmental concerns. Plaintiff responds by stating that there is no evidence of any *actual decisions* by the BIA to construct the road in a certain manner.[4] Plaintiff believes that the discretionary function exception is implicated only if the record shows an affirmative choice was made regarding each aspect of the design of the road. Case law, however, does not require

---

[4] For example, Plaintiff claims there is no evidence Defendant affirmatively decided to "leave the cliff-edge unguarded or not to construct a clear zone to mitigate the steep sideslope." (Doc. 54 p. 10)

evidence of actual decisions. That the design of the road was *susceptible* to policy analysis is enough to implicate the discretionary function exception .

Determining whether decisions qualify as "susceptible to a policy analysis grounded in social, economic, or political concerns . . . can be difficult." O'Toole v. United States, 295 F.3d 1029, 1035 (9th Cir. 2002). Decisions can be evaluated according to where they fall along a spectrum of possible policy decisions. Id. At one end of that spectrum are decisions "totally divorced from the sphere of policy analysis," such as the decisions a government driver makes while on the road. Id. At the other end of the spectrum "are those . . . actions fully grounded in . . . policy, where the government employee's exercise of judgment is directly related to effectuating . . . policy goals," such as the regulation of a bank. Id. The decisions regarding road design fall on the spectrum closer to "actions fully grounded in . . . policy." Id.

The Ninth Circuit has "generally held that the *design* of a course of governmental action is shielded by the discretionary function exception." Whisnant v. United States, 400 F.3d 1177, 1181 (9th Cir. ) For example, in ARA Leisure Services v. United States, 831 F.2d 193, 195 (9th Cir. 1987) the issue was whether the design choices made when constructing a national park road fell under the exception. The court found "a clear link" between the design decisions and "Park Service policies requiring that roads be designed to be 'esthetically pleasing [and to] . . . lie[ ] lightly upon the land utilizing natural support wherever possible.'" Id. Thus, the exception applied. Also, in Kennewick Irrigation District v. United States, 880 F.2d 1018, 1027-28 (9th Cir. 1989) the issue was whether the design choices made when constructing a canal fell under the exception. The court found that the design choices "inherently call[ed] for the use of discretion . . . to consider construction costs and the . . . ability to repay those costs." Id. at 1028. Because design choices were "rooted in economic policy judgments," the exception applied. Id. In this case, Defendant provided some of the materials a government road designer refers to for guidance in designing a road.

Those publications support Defendant's argument that road design is susceptible to policy analysis.

> Road design guidelines are meant to provide "sufficient flexibility . . . to encourage independent designs tailored to particular situations."
>
> The need for a traffic barrier is "based on an evaluation of the relative hazard of the barrier versus the hazard of the unprotected obstacle."
>
> The guidelines for the installation of traffic barriers "must be considered together with social, environmental and economic factors."
>
> The use of warning signs should be kept to a minimum because the unnecessary use of them to warn of conditions which are apparent tends to breed disrespect for all signs.

The publications provided by Defendant include statements such as:

(DSOF ¶¶ 6-11, 20) Also, the Supervisory Highway Engineer in the BIA Division of Transportation stated that a road design must "balanc[e] the relative hazard to the driver of guardrails/barriers versus leaving hazards unshielded, [and] the social/psychological effect of the over proliferation of warning signs for self evident hazards." (DSOF ex. N)

This evidence shows that the road design in this case was subject to the type of analyses that the discretionary function exception was meant to protect. When choosing the design of North Shaw Avenue, Defendant had to make a number of social, economic and political policy judgments. The fact that Defendant did not point to evidence in the record regarding *actual* decisions being based on these policy judgments is immaterial. The Ninth Circuit has previously rejected the contention that such evidence is necessary. In Kennewick, 880 F.2d at 1028, the plaintiff believed that the United States had to prove that "it considered [certain] factors" in the construction of a canal and that it had "made a conscious decision on the basis" of those factors." Id. Citing to an earlier case, the court held that this argument fundamentally misconstrued the discretionary function exception.

- 8 -

"[T]he failure to make a conscious, explicit decision" does not prevent the application of the exception. Id. Instead, the question is whether the decision was *susceptible* to political, economic, and social considerations. Id. The design of North Shaw Avenue was susceptible to such considerations and the discretionary function exception applies.

Finally, the Court wishes to make clear that certain issues survive this grant of summary judgment. The Court is not awarding summary judgment regarding the alleged failure by Defendant to construct North Shaw Avenue in conformity with the plan and design formulated by the BIA. Plaintiff has presented evidence from her expert witness that the construction of the road was not in compliance with the design. (PSOF ex. 7) This opinion apparently conflicts with the final construction report offered by Defendant that the road was completed according to the design. (DSOF ex. M) It would be improper to resolve this inconsistency at the summary judgment stage. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). While the design of the road is subject to the exception, the failure to construct the road in conformity with that design is not subject to the exception; Plaintiff may be entitled to recover if the road was not constructed according to the design and the non-conformities caused Cassandra's accident.[5] See Noel v. United States, 893 F. Supp. 1410, (N.D. Cal. 1995) (stating that "Government's allegedly negligent *execution* of its self-imposed crowd control plan" was not subject to the exception despite the *design* of that plan being subject to exception); Whisnant v. United States, 400 F.3d 1177, 1181 (9th Cir. 2005) ("[W]e have generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not.").

---

[5] If, however, the road was constructed in conformity with the design then the discretionary function exception would effectively bar any claim regarding the design and actual construction of North Shaw Avenue.

- 9 -

The Court is also *not* awarding summary judgment regarding the alleged failure to properly maintain North Shaw Avenue. Plaintiff claims that Cassandra's accident was caused, in part, by the "failure to maintain [North Shaw Avenue] in the face of erosion." (Doc. 54 p.2) The Ninth Circuit has repeatedly held that the federal government's failure to maintain property in a safe condition does not qualify for protection under the discretionary function exception. See O'Toole v. United States, 295 F.3d 1029, 1036 (9th Cir. 2002) (holding exception does not protect the failure to conduct routine maintenance); ARA Leisure Servs. v. United States, 831 F.2d 193, 195 (9th Cir. 1987) (stating exception does not apply to government's failure to maintain road in safe condition); but see Nat'l Union Fire Ins. v. United States, 115 F.3d 1415, 1422 (9th Cir. 1997) (stating that "[n]o statute, regulation or policy required" Defendant to maintain property so the discretionary function exception applied). Accordingly, the alleged failure to maintain North Shaw Avenue remains an issue for trial.

## V. Expert Disclosure

Defendant has asked the Court to strike Plaintiff's expert witness disclosure based on that disclosure being untimely. The initial Rule 16 Scheduling Order provided December 1, 2004 as the deadline for expert disclosures. Plaintiff did not disclose the name of the expert she planned on using until August 31, 2005. Defendant did not receive the expert's report until September 6, 2005 and Defendant did not receive the list of cases the expert had testified in until September 19, 2005. Because discovery closed on August 31, 2005, Defendant claims that it was not able to depose the expert and it will be prejudiced if Plaintiff is allowed to use this expert. Plaintiff believes that her untimely disclosure is largely attributable to Defendant's own untimely production of certain documents, such as the "Final Construction Report" which was not provided until August 12, 2005. Plaintiff's expert witness disclosure was untimely but striking the disclosure is not the appropriate sanction.

Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert witness disclosure "be accompanied by a written report prepared and signed by the witness. The report shall

1  contain a complete statement of all opinions to be expressed and the basis and reasons
2  therefor; . . . the compensation to be paid [to the witness]; and a listing of any other cases in
3  which the witness has testified . . . within the preceding four years." There is no dispute that
4  Plaintiff's original expert disclosure did not comply with this Rule. This failure implicates
5  Federal Rule of Civil Procedure 37(c)(1). That Rule provides "[a] party that without
6  substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless
7  such failure is harmless, permitted to use" that information at trial. Fed. R. Civ. P. 37(c)(1).
8  Thus, Plaintiff may still use her expert witness evidence if the failure to timely disclose that
9  evidence was either "substantially justified" or "harmless." See Yeti By Molly, Ltd v.
10 Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). District courts are given
11 "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)." Id. at 1106.

12     In her response to the Motion to Strike, Plaintiff implicitly focuses on her untimely
13 disclosure being "substantially justified" due to Defendant not timely producing certain
14 documents. The Court is not persuaded that the facts in this case support a finding of
15 substantial justification. The Court does, however, believe that the untimely disclosure of
16 the expert can be rendered harmless. This case has not yet been set for trial. Therefore, the
17 Court will allow additional time for Defendant to conduct discovery regarding Plaintiff's
18 expert. Such additional discovery must include a chance for Defendant to offer a rebuttal
19 report and/or depose the expert. See Motion to Strike at 4 (claiming that Defendant has
20 suffered harm and prejudice "because it cannot even offer a rebuttal report or depose the
21 witness"). This additional discovery will cure any prejudice Defendant suffered due to
22 Plaintiff's untimely disclosure. As a sanction for her untimely disclosure, Plaintiff must "pay
23 the reasonable expenses, including attorney's fees, caused by the failure" to timely disclose
24 her expert witness. Fed. R. Civ. P. 37(b). The parties shall have thirty days from the date
25 of this order in which to complete the additional discovery.

26 **VI. Motion to Amend Complaint**

27
28

On May 11, 2006, Plaintiff filed a Motion to Amend Complaint. Plaintiff seeks to amend her complaint to "clarify any confusion about whether the work Defendant performed on North Shaw Avenue was construction of a new roadway or maintenance of an existing roadway." (Doc. 61) Defendant claims that there is no confusion and "[b]oth parties agree that the government designed and reconstructed the road from a dirt road to a paved road . . . in 1996 and 1997." (Doc. 64)

A Scheduling Conference was held on March 12, 2004. A Scheduling Order was entered that same day, which provided that motions to amend the complaint were due "30 days after the Scheduling Conference." (Doc. 12) A Revised Scheduling Order entered in May 2005 retained this deadline. (Doc. 36) Plaintiff's Motion to Amend Complaint was filed over two years after the deadline for such motions. Federal Rule of Civil Procedure 16 provides that a Scheduling Order "shall not be modified except upon a showing of good cause." As recognized by the Ninth Circuit, if a party has not been diligent in seeking to comply with a Scheduling Order's deadlines, good cause is not present and "the inquiry should end." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Plaintiff has presented no evidence she was diligent in seeking to amend her complaint. Finding no good cause to modify the Scheduling Order, Plaintiff's Motion to Amend is untimely and will be denied.

Accordingly,

**IT IS ORDERED** Defendant's Motion for Summary Judgment (Doc. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** Defendant's Motion to Strike (Doc. 48) is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion to Amend Complaint (Doc. 61) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant is afforded thirty days in which to complete discovery involving Plaintiff's expert witness.

**IT IS FURTHER ORDERED** Plaintiff shall pay the reasonable expenses, including attorneys' fees, Defendant incurs in conducting this additional discovery.

**IT IS FURTHER ORDERED** the parties shall file a Joint Status Report within five days of completing the discovery contemplated by this Order. The Court will schedule the Final Pretrial Conference after receiving the Status Report.

DATED this 5th day of June, 2006.

_____
Roslyn O. Silver
United States District Judge